UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

| | | |
|---|---|---|
| MARK PANZARINO, | ) | |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | |
| -against- | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| THE CITY OF NEW YORK; BARBARA | ) | |
| VACCARO, Park Supervisor of Union Square Park | ) | |
| for the New York City Department of Parks and | ) | |
| Recreation; POLICE OFFICER MICHAEL SHAW, | ) | |
| Shield No. 20476; ROBERTO "LNU" [Last Name | ) | |
| Unknown], employee of the New York City | ) | |
| Department of Parks and Recreation; JOHN DOES; | ) | |
| and RICHARD ROES, | ) | |
| | ) | |
| Defendants. | ) | |

---------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which the plaintiff MARK PANZARINO seeks relief

for the defendants' violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C.

Section 1983, by the United States Constitution, including its First, Fourth, Sixth and Fourteenth

Amendments, and by the laws and Constitution of the State of New York.  Plaintiff seeks

damages, both compensatory and punitive, affirmative and equitable relief, an award of costs and

attorneys' fees, and such other and further relief as this court deems equitable and just.

## JURISDICTION

2.      This action is brought pursuant to the Constitution of the United States, including its First, Fourth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.  Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and 1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

## JURY TRIAL DEMANDED

3.      Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

## VENUE

4.      Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## NOTICE OF CLAIM

5.      Plaintiff filed Notices of Claim with the Comptroller of the City of New York on July 3, 2014, July 10, 2014, and July 14, 2014.  More than 30 days have elapsed since service of the Notices of Claim, and adjustment or payment thereof has been neglected or refused.

## PARTIES

6.      Plaintiff MARK PANZARINO was at all times relevant herein a resident of the State of New York.

7.      Defendant THE CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  Defendant THE CITY OF NEW YORK assumes the risks

2

incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department.

8.      Defendants BARBARA VACCARO, POLICE OFFICER MICHAEL SHAW, ROBERTO "LNU," and JOHN DOES, are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department (NYPD) and/or the New York City Department of Parks and Recreation, municipal agencies of defendant THE CITY OF NEW YORK.  Defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department and New York City Department of Parks and Recreation, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.  Defendants BARBARA VACCARO, POLICE OFFICER MICHAEL SHAW, ROBERTO "LNU," and JOHN DOES are sued individually and in their official capacity.

9.      Defendants BARBARA VACCARO and RICHARD ROES are and were at all times relevant herein duly appointed and acting supervisory officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department and/or the New York City Department of Parks and Recreation, responsible for the training, retention, supervision, discipline and control of subordinate members of the police department under their command.  Defendants are and were at all times relevant herein acting under color of state law in

3

the course and scope of their duties and functions as supervisory officers, agents, servants, and

employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with

the power and authority vested in them by THE CITY OF NEW YORK and the New York City

Police Department and the New York City Department of Parks and Recreation, and were

otherwise performing and engaging in conduct incidental to the performance of their lawful

functions in the course of their duties.  BARBARA VACCARO and RICHARD ROES are sued

individually and in their official capacity.

**STATEMENT OF FACTS**

10.     Plaintiff is an artist, who works in a variety of mediums.  The majority of his work

involves the creation of chalk imprints (drawings) on the ground throughout New York City,

which relate to a variety of political, social, philosophical, and artistic themes.

11.     These claims arise from a series of incidents in which Plaintiff was harassed,

interfered with, and retaliated against - including being assaulted, falsely arrested and prosecuted -

by employees and agents of the City of New York as he attempted to create his chalk impressions

on the ground in and around Union Square Park in Manhattan.

12.     Plaintiff's chalk art is completely harmless and evanescent, and fully protected by

the First Amendment.  Plaintiff uses chalk art pastels, which are simply a higher quality version of

traditional classroom chalk, and which do not damage concrete, and which are easily removed

from standard concrete with pedestrian traffic or nature's elements.

13.     Plaintiff, through meetings with the Chief of the New York City Law

Department's Administrative Law Division and the General Counsel of the New York City

Department of Parks and Recreation, obtained a letter, dated December 3, 2014, annexed as

4

**Exhibit A** hereto, that he could carry with him, affirming his right to make his chalk impressions without harassment and interference by employees and agents of the City.

14.     Many of the difficulties that Plaintiff experienced, described below, appear to have stemmed in significant part from an irrational animus against Plaintiff's artwork by Defendant BARBARA VACCARO, who worked at Union Square Park as a Park Supervisor for the New York City Department of Parks and Recreation during the time period in question.

15.     Plaintiff's chalk artwork was singled out for destruction by Ms. VACCARO and JOHN DOES employees under her command, while other chalk artists' creations were left alone.

**The April 20, 2014 Incident**

16.     On or about April 20, 2014, approximately 11:00 a.m., Plaintiff was attempting to make his chalk impressions at or around the Southwest corner of Union Square Park, New York, NY.

17.     Plaintiff that day was working on a chalk imprint for a local animal pet rescue operation, encouraging people to adopt an animal.

18.     A number of JOHN DOES employees of the New York City Police Department ("NYPD") kept telling Plaintiff that he had to move, and that he could not make his chalk imprints that day.

19.     On information and belief, these JOHN DOES members of the NYPD were acting at the request of JOHN DOES members of the New York City Department of Parks and Recreation ("Parks Dept.").

20.     The JOHN DOES members of the NYPD moved Plaintiff further inside the park,

5

closer to a fountain statue honoring Mahatma Gandhi, and too far away from where the pet

rescue operation was set up for Plaintiff's chalk impression to be effectively associated with it.

21.     JOHN DOES members of the NYPD then moved Plaintiff again – to an area next

to the Greenmarket, that was an out-of-the-way place very far from the pet rescue operation -

after a fortune teller complained about Plaintiff's presence near the Gandhi statue.

22.     Plaintiff made his chalk imprint in that unsatisfactory location near the

Greenmarket, and then left.


**The May 11, 2014 Incident**

23.     During the late morning hours of May 11, 2014, at or around the area across from

29 Union Square West, New York, NY, plaintiff was also creating his chalk imprints on the

ground.

24.     After Plaintiff had been working for approximately an hour or an hour and a half or

so, Defendant BARBARA VACCARO approached Plaintiff and began to complain.

25.     Ms. VACCARO's title was the Park Supervisor for Union Square Park.

26.     Ms. VACCARO stated, falsely, that the chalks Plaintiff was using were staining

the concrete, and that she needed to have a power washer used to remove the chalk imprints, and

that the power washer destroys the concrete when removing them.

27.     Ms. VACCARO told Plaintiff that he could continue to make his imprints if he

switched to another kind of chalk.

28.     Plaintiff responded that he had already started the piece in question, and that he

was going to finish it, and that he had been doing it for two years and never had any problems.

6

He also explained to Ms. VACCARO that he had documented his pieces disappearing over a few days with the weather, and that maybe she was thinking of another artist's work.

29.     Ms. VACCARO responded that if Plaintiff did not stop she was going to call the police.

30.     Plaintiff believes his response was that she should go ahead then and call the police.

31.     Ms. VACCARO called the police, and Plaintiff continued working for approximately another twenty minutes or so until the police arrived.

32.     POLICE OFFICER MICHAEL SHAW and another JOHN DOE Police Officer approached Plaintiff.

33.     The Police Officers asked Plaintiff about the materials Plaintiff was working with, and otherwise about what Plaintiff was doing.  The Officers also asked to look in Plaintiff's tip buckets.

34.     The Officers told Plaintiff that he had to stop making his chalk imprint, or he would be arrested.

35.     Plaintiff informed the Officers that what he was doing was lawful, and that he was not going to stop making his chalk imprint.

36.     Plaintiff then continued to make his chalk imprint for a few minutes, at which point the Officers placed Plaintiff in handcuffs and arrested and searched him.

37.     Plaintiff and his art materials were brought to a local police precinct.

38.     The Officers mocked Plaintiff en route to the Precinct, stating that it was pathetic that Plaintiff was resorting to making graffiti with chalk instead of making real graffiti, and that

Plaintiff was not a six year old girl, and that even their little niece could do better than Plaintiff.

39.     The Officers continually tried to question Plaintiff despite Plaintiff's request for the assistance of counsel.

40.     At the precinct Plaintiff was placed into a holding cell.

41.     At one point a JOHN DOE Officer offered to allow Plaintiff to use a precinct phone to call his attorney.

42.     Plaintiff stated that his attorney's phone number was on the phone that the Officers had seized from him.

43.     The JOHN DOE Officer laughed and hung up the phone, without providing Plaintiff with the opportunity to get his lawyer's phone number from his phone.

44.     Plaintiff did not receive any food or drink during the hours he was held at the precinct.

45.     Plaintiff was patted down several times while he was held at the Precinct.

46.     Plaintiff informed the Officers that he was in need of his HIV and seizure medication.

47.     The Officers brought out a Desk Appearance Ticket ("DAT"), and told Plaintiff that if he signed it he could leave.

48.     Plaintiff responded that he would not sign anything until he spoke with a lawyer.

50.     A number of JOHN DOES Officers at the precinct yelled at Plaintiff, stating that Plaintiff had to sign the DAT.

51.     Plaintiff continued to respond that he would not sign anything until he spoke with a lawyer.

8

52.     Some time thereafter, JOHN DOES Officers took Plaintiff to Bellevue Hospital to get his medication.

53.     The Officers put Plaintiff not only in handcuffs, but also in foot shackles, while transporting him to Bellevue Hospital.

54.     On information and belief the Officers placed Plaintiff in foot shackles in order to retaliate against him for his refusal to sign the DAT.

55.     Plaintiff received his medication at Bellevue Hospital, and was then taken back to the precinct.

56.     From the Precinct Plaintiff was taken to Manhattan Central Booking.

57.     Plaintiff was arraigned at approximately 11:30 p.m. or midnight, and released on his own recognizance.

58.     Plaintiff was falsely charged with Criminal Mischief in the Fourth Degree, Making Graffiti, and Possession of Graffiti Instruments, and maliciously prosecuted by Officer SHAW and Ms. VACCARO.

59.     The Criminal Court Complaint, which was signed by Officer SHAW (with a Supporting Deposition, attesting to its veracity, signed by Ms. VACCARO) that was lodged against Plaintiff stated as follows:

> I observed the defendant inside the park at the above location painting skulls on the sidewalk using an oil pastel. I stopped the defendant and took three boxes of oil pastels and stencils from the box on the ground next to where the defendant was crouched on the ground. Based on my training and experience, I know that the oil pastels and stencil are of a type commonly used to make graffiti on property.
>
> I am informed by Barbara Vaccaro, of an address known to the District Attorney's Office, that she works as a supervisor at the New York City Parks Department and

9

that the defendant did not have permission or authority to make any markings on or otherwise damage or deface the sidewalk. Ms. Vaccaro also informs me that asked the defendant not to draw on the sidewalk and he refused. She also informs me that the oil pastel use by the defendant does not wash off easily from the sidewalk but must be cleaned off using a powerwasher and takes several hours to remove.

60.     Officer SHAW and Ms. VACCARO lied when they falsely alleged, under penalty of perjury, that Plaintiff was using oil pastels to create his chalk imprints, and that it required a power-washer to remove Plaintiff's work from the ground.

61.     All charges against Claimant were dismissed in their entirety on July 1, 2014.

62.     Plaintiff was chilled from attempting to make his chalk impressions in and around Union Square Park during the period of time that the false charges were pending against him.

63.     Some of Plaintiff's property, including a bell, was damaged by the Officers during the course of his arrest and transport to the police precinct, or otherwise while Plaintiff was in police custody.

64.     The Officers also illegally altered the data on Plaintiff's phone, removing certain data and adding several clips of video footage (likely inadvertently).

65.     The data that the Officers illegally deleted from Plaintiff's phone was video footage depicting Plaintiff creating his chalk work.

66.     The Officers also changed the desktop screen saver image to a photograph of Plaintiff that he had taken at the scene, prior to his arrest.  This was likely done inadvertently as the Officers illegally fumbled around while searching the contents of Plaintiff's phone, and seeking to delete items that they thought depicted their interactions with Plaintiff.

**The July 8, 2014 Incident**

67.    On July 8, 2014, approximately 3:00 p.m., Plaintiff was again attempting to create his chalk imprints (which involved skulls, and which was entitled "Louis Vuitton is Dead"), at or around the Northwest plaza of Union Square Park, New York, NY.

68.    Plaintiff had been working for a number of hours that morning (he had been harassed earlier that day by a JOHN DOE member of the NYPD, at approximately 11:30 a.m.), and had almost finished the work, when he was approached by Defendant ROBERTO "LNU," who said he had been directed by his supervisor – who he referred to as a woman, on information and belief Ms. VACCARO – to wash away the skulls.

69.    ROBERTO "LNU" told Plaintiff that Plaintiff would have a few minutes more to work, while he walked around the park to see if anyone else was drawing skulls, to make sure that Plaintiff's chalk skulls were the ones Ms. VACCARO wanted washed away.

70.    Plaintiff informed ROBERTO "LNU" that he was still creating the work, but ROBERTO "LNU" told Plaintiff that he had his orders.

71.    Shortly thereafter, ROBERTO "LNU" and other JOHN DOES members of the Parks Dept. staff came over to Plaintiff with a very large container of water, and poured it over Plaintiff's work and began scrubbing the pavement where Plaintiff's work had been placed with brushes and power-washers.

72.    Plaintiff asked one of the JOHN DOES who was destroying Plaintiff's work if Ms. VACCARO was the supervisor that day, and the response was that she was indeed the supervisor.

11

**The July 12, 2014 Incident**

73.     On July 12, 2014, approximately 1:30 p.m., Plaintiff was again attempting to create his chalk imprints at or around the South plaza of Union Square Park.

74.     Plaintiff had been working at that location for less than an hour when approximately three or four JOHN DOES Parks Dept. employees approached him.

75.     Without saying a word to Plaintiff, these JOHN DOES employees again destroyed Plaintiff's work, with water and a power-washer, while Plaintiff was still working on it.

76.     Plaintiff asked who their supervisor was, and asked if they were aware that the charges against Plaintiff from his arrest in the park had been dismissed, and if they were aware that Plaintiff was engaged in lawful activity, and that what they were doing was illegal.

77.     The JOHN DOES did not say anything at all to Plaintiff in response.

78.     One of the JOHN DOES sprayed Plaintiff with the power washer, and also sprayed Plaintiff's chalks, destroying a box of it.

79.     On information and belief, Ms. VACCARO was the supervisor who sent these JOHN DOES Parks Dept. employees to destroy Plaintiff's work.

**The September 26, 2014 Incident**

80.     On September 26, 2014, approximately Noon, Plaintiff was again attempting to create his chalk imprints at or around the South plaza of Union Square Park.

81.     Plaintiff was creating a work entitled "You Are Here," which consisted of an outline of a body surrounded by rainbow colors.

82.     This was an interactive work, and the public was invited orally to lay down on the

12

ground within (or without, if they wanted) the negative space of the body outline.

83.     Plaintiff took a break, and went across the street to get something to eat.

84.     Plaintiff returned from his break after approximately half an hour, to find that approximately five or six JOHN DOES employees of the Parks Dept. had set up four cones around the perimeter of Plaintiff's work, and had their power-washer at the location.

85.     Plaintiff approached a female JOHN DOE Parks Dept. employee, and asked her if she intended upon removing Plaintiff's work.

86.     She responded that she did intend to do so.

87.     Plaintiff then asked if she intended to also remove another chalk artist's work that was in very close proximity to Plaintiff's work

88.     The female JOHN DOE ignored Plaintiff from that point forward, and began to consult with the other JOHN DOES Parks Dept. employees present at the location.

89.     As the JOHN DOES prepared the power-washer, Plaintiff lay down in the negative space of the body outline, in an attempt to dissuade them from destroying his work.

90.     The JOHN DOES did not destroy Plaintiff's work while Plaintiff was laying down in the body outline.

91.     Whenever Plaintiff stood up and stepped away from the body outline, however, the JOHN DOES would turn on the motor of the pressure-washer, at which point Plaintiff was forced to lay back down in the body outline to prevent them from destroying his work.

92.     This cat and mouse game continued for approximately two hours, until Plaintiff was exhausted and went home.

93.     Although the other chalk artist's work was in very close proximity to Plaintiff's

work, at no time did the JOHN DOES make any attempt to, or express any interest in, removing

that work.

94.     Plaintiff and his work were specifically targeted for harassment and interference by

the JOHN DOES, and their actions on this day destroyed the entire artistic concept of the work.

95.     On information and belief, Ms. VACCARO was the supervisor who sent these

JOHN DOES Parks Dept. employees to harass and interfere with Plaintiff, and to try to destroy

his work.

## FIRST CLAIM

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

96.     The plaintiff incorporates by reference the allegations set forth in all previous

Paragraphs as if fully set forth herein.

97.     By their conduct and actions in seizing plaintiff, searching plaintiff and his

property, falsely arresting and imprisoning plaintiff, assaulting and battering plaintiff, trespassing

upon plaintiff, maliciously prosecuting plaintiff, abusing process against plaintiff, fabricating

evidence / false statements against Plaintiff, violating rights to due process of plaintiff, harassing

plaintiff, violating and retaliating for plaintiff's exercise of his rights to free speech and assembly,

converting Plaintiff's property, failing to intercede on behalf of the plaintiff and in failing to

protect the plaintiff from the unjustified and unconstitutional treatment he received at the hands of

other defendants, defendants BARBARA VACCARO, POLICE OFFICER MICHAEL SHAW,

ROBERTO "LNU," JOHN DOES and/or RICHARD ROES, acting under color of law and

without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Sixth, and Fourteenth amendments.

98.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## SECOND CLAIM

## DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

99.    The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

100.    By their conduct in failing to remedy the wrongs committed by their subordinates and in failing to properly train, supervise, or discipline their subordinates, supervisory defendants BARBARA VACCARO and RICHARD ROES caused damage and injury in violation of plaintiff's rights guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Sixth and Fourteenth amendments.

101.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## THIRD CLAIM

## LIABILITY OF DEFENDANT THE CITY OF NEW YORK FOR CONSTITUTIONAL VIOLATIONS

15

102.    The plaintiff incorporates by reference the allegations set forth in all previous

Paragraphs as if fully set forth herein.

103.    At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants had de facto policies,

practices, customs and usages which were a direct and proximate cause of the unconstitutional

conduct alleged herein.

104.    At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants, had de facto policies,

practices, customs, and usages of failing to properly train, screen, supervise, or discipline

employees and police officers, and of failing to inform the individual defendants' supervisors of

their need to train, screen, supervise or discipline said defendants.  These policies, practices,

customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged

herein.

105.    At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants, had de facto

policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of

and/or retaliation for individuals' exercise of free speech and association in a manner that offends

or affronts City officials or employees, or is interpreted by them as challenging their authority or

documenting or reporting their misconduct (including, but not limited to, video recording their

misconduct).  These policies, practices, customs, and usages were a direct and proximate cause of

the unconstitutional conduct alleged herein.

16

106.    At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had de facto policies, practices, customs and/or usages of encouraging and/or tacitly sanctioning the cover-up of other law enforcement officers' misconduct, through the fabrication of false accounts and evidence and/or through "the blue wall of silence."  Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

107.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

**FOURTH CLAIM**

**RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK
FOR STATE LAW VIOLATIONS**

108.    The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

109.    The conduct of the individual defendants alleged herein, occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as New York City police officers or Parks Dept. employees, and/or while they were acting as agents and employees of the defendant THE CITY OF NEW YORK, and, as a result, the defendant THE CITY OF NEW YORK is liable to the plaintiff pursuant to the state common law doctrine of respondeat superior.

110.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise

damaged and injured.

## FIFTH CLAIM

### ASSAULT AND BATTERY

111.    The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

112.    By the actions described above, defendants did inflict assault and battery upon the plaintiff.  The acts and conduct of defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

113.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## SIXTH CLAIM

### FALSE ARREST AND FALSE IMPRISONMENT

114.    The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

115.    By the actions described above, defendants caused plaintiff to be falsely arrested and imprisoned, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

116.    As a result of the foregoing, plaintiff was deprived of his liberty and property,

experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## SEVENTH CLAIM

### VIOLATION OF RIGHT TO EQUAL PROTECTION OF LAW

117.    The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

118.    By the actions described above, defendants violated plaintiff's rights to equal protection of law.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

119.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## EIGHTH CLAIM

### VIOLATION OF AND RETALIATION FOR THE EXERCISE OF RIGHTS TO FREE SPEECH AND ASSEMBLY

120.    The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

121.    By the actions described above, defendants violated, and retaliated for the exercise of, the free speech and assembly rights of plaintiff.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

122.     As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## NINTH CLAIM

## ABUSE OF PROCESS

123.     The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

124.     By the conduct and actions described above, defendants employed regularly issued process against plaintiff compelling the performance or forbearance of prescribed acts.  The purpose of activating the process was intent to harm plaintiff without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to plaintiff which was outside the legitimate ends of the process.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

125.     As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## TENTH CLAIM

## TRESPASS

126.     The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

20

127.    The defendants willfully, wrongfully and unlawfully trespassed upon the person of plaintiff.

128.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## ELEVENTH CLAIM

### INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

129.    The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

130.    By the actions described above, defendants engaged in extreme and outrageous conduct, conduct utterly intolerable in a civilized community, which intentionally and/or negligently caused emotional distress to plaintiff.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

131.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## TWELFTH CLAIM

### NEGLIGENCE

132.    The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

133.    The defendants, jointly and severally, negligently caused injuries, emotional

distress and damage to the plaintiff.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

134.   As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## THIRTEENTH CLAIM

## NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

135.   The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

136.   Defendants THE CITY OF NEW YORK negligently hired, screened, retained, supervised and trained defendants.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

137.   As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## FOURTEENTH CLAIM

## CONSTITUTIONAL TORT

138.   Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

22

139.    Defendants, acting under color of law, violated plaintiff's rights pursuant to Article I, §§ 6, 8, and 12 of the New York State Constitution.

140.    A damages remedy here is necessary to effectuate the purposes of §§ 6, 8, and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiff's rights under those sections.

141.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## FIFTEENTH CLAIM

### CONVERSION

142.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

143.    Through their actions in causing a serious interference with, and/or in seriously interfering with, plaintiff's right of possession in his property, and/or in exercising unauthorized possession and/or ownership over plaintiff's property, defendants wrongfully converted plaintiff's property.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

144.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

23

## SIXTEENTH CLAIM

### MALICIOUS PROSECUTION

145.    The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

146.    By the actions described above, defendants maliciously prosecuted plaintiff without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

147.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.


WHEREFORE, plaintiff demands the following relief jointly and severally against all of the defendants:

    a.  Compensatory damages;

    b.  Punitive damages;

    c.  The convening and empaneling of a jury to consider the merits of the claims herein;

    d.  Costs and interest and attorney's fees;

    e.  Such other and further relief as this court may deem appropriate and equitable.

24

Dated:        New York, New York
              July 15, 2015

                              _____
                              Jeffrey A. Rothman, Esq.
                              315 Broadway, Suite 200
                              New York, New York 10007
                              (212) 227-2980

                              David Rankin, Esq.
                              Rankin & Taylor, PLLC
                              11 Park Place, Suite 914
                              New York, New York 10007
                              (212) 226-4507

                              Attorneys for Plaintiff